# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CR-0156-CVE |
| | ) | |
| MATTHEW SCOTT STOREY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Suppress and Brief in Support (Dkt. # 20). Defendant Matthew Scott Storey is charged with attempt to possess methamphetamine with intent to distribute (count one) and possession of methamphetamine with intent to distribute (count two). Dkt. # 12. Defendant filed a motion to suppress, Dkt. # 20,[1] and plaintiff filed a response (Dkt. # 21) with five exhibits (A-E), including a DVD-R labeled Exhibit E.[2] On November 4, 2013, the Court held an evidentiary hearing and heard the testimony of FedEx Corporation (FedEx) employees Joshua Blu Guthery and Gary Michener and Tulsa County Sheriff's Office (TCSO) Deputies Lance Ramsey and Leighton Boyd. Based on the evidence of record, including the testimony of the four witnesses (all of whom were credible), the Court finds and concludes as follows.

---

[1] The motion to suppress was filed by defendant's previous counsel, Julia O'Connell and Barry Derryberry. Dkt. # 20. Plaintiff's current counsel, Fred Randolph Lynn, has adopted the motion.

[2] The DVD-R contains a brief video of Deputy Lance Ramsey delivering a package to Storey.

**I.**

Guthery, testified that, on July 31, 2013, he identified a suspicious package while at work.[3] Guthery is an operations manager at FedEx Express, a branch of FedEx. As an operations manager, he manages twenty-four couriers. He has worked at FedEx for thirteen years. Guthery identified the package while in the process of conducting a random check of packages on a conveyer belt at the FedEx office. Guthery testified that he would randomly spend ten to fifteen minutes watching packages go down the conveyor belt, to see if any package appeared to be suspicious. Without contacting law enforcement, Guthery inspected, turned over, and opened the package. Inside the package were six bundles, each wrapped in cellophane. Guthery estimates that each bundle was eight to ten inches long and had a circumference of three to four inches. Each bundle was overly packed with cellophane. The bag was vacuum sealed with black packaging on the inside. The bundles felt hard to the touch.

It is FedEx's policy that it will not transport controlled substances and it reserves the right to inspect any package within its system. Guthery, believing the bundles contained drugs, contacted Ramsey. Ramsey was Guthery's point of contact with the TCSO, and was referred to Guthery by Evan Foster, a member of the Tulsa County canine unit. Guthery called Ramsey to advise him that

---

[3] Plaintiff's brief states that FedEx employees look for a number of factors to identify suspicious packages. The factors include: extra tape along a package's seams, heavy or excessive tape around the package, no return address or a post-office box as the return address, no phone number for the sender, no phone number for the recipient, cash payment, an individual as the sender, an individual as the recipient, a return address from California or Colorado, extremely battered boxes, used boxes, and two air bills. Guthery testified that the factors he considers are whether the package has a handwritten air bill, the presence of excessive tape, if a package is from California, if the sender and recipient are both individuals, and if the package was paid for with cash. He further testified that each of those factors was present in the suspicious package.

he had observed a package that appeared to contain illegal drugs and asked Ramsey to pick it up. Guthery left the package and its contents with Michener, as Guthery had to leave the office to deliver packages. Guthery instructed Michener to investigate the package. Guthery testified that he always opens packages before calling the police and that, if their contents are not illegal, he returns them to the conveyor belt. He estimates that he has opened approximately one hundred packages.

Michener is a manger at FedEx. He has been a manager for one-and-a-half years and has worked at FedEx for five-and-a-half years. Before the deputies arrived, Michener took the package into an office. Michener investigated the bundles, retrieved a razor blade, and began to cut through the wrapping of one of the bundles. Michener testified that the bundles were wrapped in several layers of cellophane, tape, or plastic wrap and appeared as though they had been dipped in wax. When Michener began cutting into the bundles, another manager was in the office, but no members of law enforcement were present.

Ramsey and Boyd arrived at the FedEx office to find that Michener had already cut through approximately three-quarters of the cellophane wrapped around one of the bundles, and Michener continued to cut through the cellophane in their presence. After Michener opened one of the bundles, the deputies and Michener observed a white, crystalline substance. Michener then gave the box and its contents to the deputies. Michener had identified a package containing an illegal substance once previously.

Ramsey is assigned to the Tulsa County drug task force. He was been with the TCSO for twenty-five years. Upon receiving the call from Guthery, he and Boyd drove to the FedEx office. The office, located near the Tulsa International Airport, is within the jurisdiction of the TCSO, as opposed to local law enforcement. Upon arriving at the office, they met with Michener and watched

3

him complete the opening of the bundle. After the bundle was opened, the box was taken to TCSO, where the crystalline substance tested positive for methamphetamine. Boyd did not provide direct testimony because the parties stipulated that Boyd's testimony would be almost identical to Ramsey's. Boyd was called for cross-examination only.

There is no evidence that any FedEx employee received instructions, directions, encouragement, aid, or a tip from law enforcement. There is no evidence that any law enforcement officer received a tip about the package. The Court finds that law enforcement did not instruct, direct, aid, instigate, or encourage any FedEx employee to inspect, begin opening, or continue opening the package or its contents. The Court further finds that law enforcement did not receive any tip about the package or provide any tip to any FedEx employee. No testimony was given regarding any subsequent events, and the Court will rely on the parties' briefs.[4]

Later that day, deputies began surveillance of the package's delivery address, 8724 East 28th Place, Tulsa, Oklahoma. A records check of the residence verified that Brandy Storey lived at the address, but Steven Wilson, to whom the package was addressed, was not verified as living there. Deputies planned a controlled delivery of the package. An anticipatory search warrant was obtained for the residence. The triggering event for the search warrant was the delivery of the package.[5] The

---

[4] Counsel for the defendant stated at the evidentiary hearing that he was heavily emphasizing the events that occurred at the FedEx office and that he would not be focusing on the subsequent events.

[5] Handwritten at the bottom of the warrant was "Warrant effective upon triggering event of ID'd package being delivered to listed location/address on package." Dkt. # 21-3, at 1. The triggering event was based upon the search warrant affidavit, which stated "execution of this search warrant will not occur unless and until the parcel has been physically received by person and has physically been taken into the residence at that time and not before this work will be executed for delivery at this time." Dkt. # 21-2, at 2.

search warrant was not only for methamphetamine, but also for instrumentalities, monies, and records. The affidavit for search warrant recited that those who use and sell methamphetamine often keep such items.[6] The affidavit also provided that, "Members of the Tulsa County Violent Crime/Drug Task Force will maintain visual observation of the residence to prevent the controlled substance, (ICE), from leaving the residence." Dkt. # 21-2, at 2.

Deputies repackaged the FedEx package with 20 grams of the methamphetamine. Ramsey, acting in an undercover capacity, attempted a controlled delivery of the package at approximately 12:00 p.m. A female juvenile was the only person present at the location. However, she stated that her uncle was expecting the package. Ramsey left a phone number and asked for the juvenile's uncle to contact him. An adult male contacted Ramsey at 4:50 p.m. and arranged for the parcel to be delivered the next morning.

On August 1, 2013, at 7:00 a.m., Ramsey returned to 8724 East 28th Place to conduct the controlled delivery. An individual who was observed arriving at the residence earlier that morning answered the door, accepted the package, and signed as "Steven Wilson." Shortly thereafter, the individual left the house, walked to the car in which he had arrived, and placed the package in his car. Deputies immediately approached both the individual and the residence. The individual was identified as Matthew Scott Storey and the package was retrieved from the car. Deputies executed the search warrant at the residence and found digital scales, wire-transfer receipts, drug paraphernalia, a firearm, and ammunition.

---

[6] "[B]ased on prior training and experience in narcotics investigation, people who use and sell controlled dangerous substances keep drug paraphernalia associated with the distribution of CDS, monies, records of their transactions, and customer lists." Dkt. # 21-2, at 2.

## II.

Defendant makes two arguments in support of suppression of the evidence: that the intrusion into the parcel at the FedEx office violated the defendant's Fourth Amendment rights (requiring the suppression of evidence gained from the intrusion and the invalidation of the search warrant) and that the execution of the search warrant was invalid because the condition precedent to the search was not met (requiring the suppression of all evidence seized on the basis of the search warrant).

### A.

The Constitution's protection against unreasonable search and seizure applies to governmental action alone. United States v. Jacobsen, 466 U.S. 109, 113 (1984). It does not protect against searches and seizures, even unreasonable ones, by private individuals who are not acting as agents of the government or with the knowledge or participation of a government official. Id. However, if the government dominates, coerces, or directs a private person's actions, a resulting search and seizure may violate the Fourth Amendment. Pleasant v. Lovell, 876 F.2d 787, 796 (10th Cir. 1989). A two-point inquiry is used to determine whether a private person has become an instrumentality or agent of the police: (1) did the government know of and acquiesce to the conduct and (2) did the party performing the search intend to assist law enforcement efforts or further his own ends? United States v. Smythe, 84 F.3d 1240, 1242 (10th Cir. 1996). The knowledge and acquiescence inquiry requires that a government agent affirmatively encourage, instigate, or initiate the private action. Id. at 1243. A government agent involved merely as a witness is insufficient to implicate the Fourth Amendment. Id.; see also United States v. Leffall, 82 F.3d 343, 347 (10th Cir. 1996) (applying the same test to the second inquiry); United States v. Andrews, 618 F.2d 646, 650 (10th Cir. 1980) (commending, in dicta, airline employees who, desiring to aid law enforcement,

6

searched for narcotics in airfreight shipments when the government neither indirectly encouraged nor direct participated). After-the-fact involvement by law enforcement will not implicate the Fourth Amendment. See United States v. Poe, 556 F.3d 1113 (10th Cir. 2009) (likening police arriving after a search is completed to a "mere witness" situation).

The Tenth Circuit has ruled in a number of Fourth Amendment cases involving shipped packages. In Smythe, the manager of a bus station was requested to ship a package he found suspicious. 84 F.3d at 1241. He telephoned the police to ask if he could open the package and an officer came to the station. Id. at 1242. The manager opened the package while the officer observed, but the officer provided no assistance or encouragement. Id. The Tenth Circuit determined that the Fourth Amendment was not implicated by this search; the police did not instigate or encourage the search and the manager had a legitimate, independent motivation to search the package. Id. at 1243.

Similarly, in Leffall, an airfreight employee decided to open a package because he believed it contained contraband, either drugs or unarmed explosives. 82 F.3d at 345-46. His airline's policy was to prevent the shipment of unlawful substances. Id. at 346. The employee, seeking a witness, drove to an airport police office and opened the box and its contents in front of an officer (the employee had previously opened the box, but not its contents). Id. The Tenth Circuit upheld the district court's ruling that no governmental search took place. Id. at 349; see also United States v. Benoit, 713 F.3d 1, 10 (10th Cir. 2013) (refusing to characterize a search as a governmental action where an officer was called to a home to witness a private search, but did not encourage, instigate, or initiate the private action).

7

In contrast, if an officer has substantially more involvement, then the Fourth Amendment may be implicated. United States v. Souza, 223 F.3d 1197, 1202 (10th Cir. 2000). In Souza, a DEA agent noticed a package at a UPS office that appeared suspicious and set it to the side. Id. at 1199. When a UPS employee arrived, the DEA agent initiated a conversation and told the employee that the package was suspicious. Id. at 1200. Twice within the span of five minutes, DEA agents encouraged the UPS employee to open the box. Id. at 1202. Additionally, DEA agents helped to open the package, using a knife to cut through hardened foam. Id. at 1200. This level of involvement was characterized as a governmental search subject to the Fourth Amendment. Id. at 1202.

The facts of this case are much more similar to Smyth and Leffall than to Souza. Guthery, a FedEx employee, identified the package as suspicious and began opening it even before contacting TCSO. Michener, another FedEx employee, began opening the inner packages before the officers arrived. The inner package was opened without the aid, encouragement, or instigation of the officers. It is clear that the officers acted as mere witnesses to the search (arriving after the fact for part of the intrusion). When governmental action amounts to merely witnessing a private search, the Fourth Amendment is not implicated. Defendant argues that the FedEx employees performed the search only to avoid violating the law and therefore their actions were, in effect, controlled by the government. However, the airfreight employee in Leffall had a similar motive,[7] and no governmental search was found in that case. Nonetheless, even if the motive were suspect, defendant has failed to show any government action beyond merely witnessing the search. As both

---

[7] The airfreight employee thought the package could have contained either drugs or unarmed explosives.

inquiries as to whether the private actor is actually a government agent require government action beyond mere witnessing, defendant is unable to establish any governmental action implicating the Fourth Amendment. The Court finds that no Fourth Amendment violation occurred when the package and its contents were opened and turned over to the TCSO.

**B.**

Defendant's second argument is that the execution of the search warrant was defective because the condition precedent to the search was not met. Defendant admits that the anticipatory event triggering the search warrant was the delivery of the package. At the evidentiary hearing, defendant did not deny that the triggering event occured. However, defendant contends that once he exited the residence with the parcel in his possession, the condition precedent was no longer met. Defendant further argues that probable cause for searching the residence would no longer exist and that, contrary to assurances set forth in the affidavit, deputies had failed to "prevent the controlled substance, (ICE), from leaving the residence." Dkt. # 21-2, at 2. Defendant maintains that the officers therefore effectively conducted a warrantless search of a residence, which is presumed to be unconstitutional.

An anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specific place." United States v. Grubbs, 547 U.S. 90, 94 (2006) (quoting 2 W. LaFave, Search and Seizure § 3.7(c), at 398 (4th ed. 2004)) (internal quotation marks omitted). An anticipatory search warrant's execution is generally subject to a condition precedent other than the passage of time, a "triggering condition." Id. The triggering condition may be set out in the warrant or the accompanying affidavit. United States v. Hugoboom, 112 F.3d 1081, 1087 (10th Cir. 1997).

9

It is clear in this case that the triggering condition for the anticipatory search warrant was the delivery of the package. The warrant itself includes a handwritten statement to that effect and the affidavit provided that no search would be conducted until the delivery was made and the package was taken into the residence. The portion of the affidavit conditioning the search upon delivery is bracketed and "triggering event" is written next to it. When the package was accepted by defendant, this condition was satisfied and the warrant became executable. Defendant argues that a further condition precedent existed: that the package had to remain inside the house. This alleged further condition appears to be based upon at least one of three arguments: the purported assurance that the package would stay in the house was an additional condition precedent; the package leaving the home prevented the warrant from being validly executed; or that once the package left the home, there was no longer probable cause that contraband remained within the residence. None of these three arguments is convincing.

First, the alleged assurance that the package would remain within the residence was not a condition precedent; it was not even an assurance. The "condition" that the package remain within the house was not written on the face of the warrant (as the requirement that the package be delivered was). Nor was it part of the bracketed section (paragraph 7) of the affidavit next to which "triggering event" was written.[8] Dkt. # 21-2, at 2. In fact, no assurance was made that the package would remain in the residence. Rather, "to prevent the controlled substance, (ICE), from leaving the residence" was merely an explanation for why "[m]embers of the . . . Task Force [would] maintain visual observation of the residence." Id. In this context, reading it as an assurance is

---

[8] Although one of the brackets touches the paragraph 6 line containing the phrase "to prevent the controlled substance, (ICE), from leaving the residence," it is clear that the bracketed section pertains to paragraph 7. Dkt. # 21-2, at 2.

counterintuitive. Mere visual observation could not actively prevent the package from leaving the residence. At best, observation could detect when the package was leaving the residence and allow authorities to quickly seize the package before it was taken from the area (which is exactly what happened).

Second, the package leaving the home did not prevent the warrant from being executed. At least two other circuits have held that, when an anticipatory warrant is conditioned on a controlled delivery being accepted and brought into a residence, the warrant may be validly executed even if the package is no longer in the residence itself. United States v. Becerra, 97 F.3d 669, 671 (2d Cir. 1996); United States v. Jackson, 55 F.3d 1219, 1223-24 (6th Cir. 1995). The Second Circuit provides a compelling rationale for this position:

> [A]n anticipatory warrant whose perfection requires no more than the delivery of a package to, or in the presence of, the suspect, is not invalidated because the parcel is taken off the premises after delivery. The package's relevance to such a warrant is that it suggests a relationship between drug dealers and a suspect's premises. The warrant remains contingent until delivery because some uncertainty exists as to whether the suspect will give further credence to that relationship by accepting the package. When the suspect accepts the parcel, that uncertainty is resolved. At that point, the package becomes irrelevant. Predicating the validity of the warrant on the continued presence of the package makes much ado out of something whose significance has in fact been exhausted.

Becerra, 97 F.3d at 671. Once the package was delivered, the condition precedent of the warrant was met, and the warrant could be executed. As explained by the Second Circuit in Becerra, whether or not the package remained in the residency, the warrant could still be used to search the residence.

Finally, probable cause exists to search the residence even if the package is no longer in the home. If probable cause exists that a suspect is involved in drug trafficking or supplying, probable cause to believe additional evidence of drug-trafficking crimes could be found at the suspect's

11

residence will also exist. United States v. Sanchez, 555 F.3d 910, 914 (10th Cir. 2009). Other circuits have held that a controlled delivery gives rise to probable cause to search the residence for other evidence of drug trafficking, even if the package is no longer in the home. Jackson, 55 F.3d at 1223-24. Further, the affidavit provided that those who sell or use controlled substances often have evidence related to their crimes within their residences. And the anticipatory warrant declared that sufficient probable cause existed (assuming the package was accepted) to search for "instrumentalities used in the use and distribution of controlled substances, monies, and or objects consistent with the diversification of wealth, financial records and drug notation . . . ." Dkt. # 21-3, at 1. None of these additional materials was contained in the package. The Court finds that probable cause existed to search the residence once the package was accepted even if the package was no longer on the premises. The Court finds that the execution of the anticipatory search warrant was valid.[9]

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress and Brief in Support (Dkt. # 20) is **denied**.

**DATED** this 5th day of November, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[9] In its brief, plaintiff argues that even without a warrant, deputies were justified in their search and seizure of evidence from defendant's vehicle. At the evidentiary hearing, the parties agreed that the search of defendant's vehicle was not at issue.